UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| THOMAS S.[1], ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 1:22cv270 |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act and for Supplemental Security Income under Title XVI of the Act.  Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2

2. The claimant has not engaged in substantial gainful activity since November 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following nonsevere impairments: alcohol abuse, acute kidney injury, hyperkalemia, and syncope (20 CFR 404.1522 and 416.922).

4. The claimant has the following severe impairments: congestive heart failure, non ischemic cardiomyopathy, hypertension, acute pulmonary edema, ICD placement, and minimal obstructive ventilatory impairment (20 CFR 404.1520(c) and 416.920(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except occasional climbing; frequent balancing, stooping, kneeling, crouching, and crawling; should avoid unprotected heights; should avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dust, gases, and poor ventilation.

7. The claimant is capable of performing past relevant work as a Warehouse Worker, DOT# 922.687-058, SVP 2, medium per the DOT. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

8. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2019, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 19-26).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed his opening brief on December 12, 2022. On March 8, 2023 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on March 29, 2023. Upon full review of the record in this cause, this court is of the view that the

Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 4 was the determinative inquiry.

In support of remand, Plaintiff argues that the ALJ's decision is unreasonable and that the ALJ's credibility analysis was erroneous. As the ALJ's decision noted, Plaintiff has suffered from several heart ailments. He experienced two cardiac events in November 2019 (Tr. 22). Plaintiff was diagnosed with congestive heart failure and nonischemic cardiomyopathy and was fitted with an implantable cardioverter defibrillator (ICD). Plaintiff continued care with a cardiologist through January 2020 (Tr. 23). Due to insurance problems, Plaintiff did not receive any additional care between January 2020 and his March 2021 consultative examination. At this time Plaintiff told the examiner that he did not experience fatigue, shortness of breath, chest pain,

4

or heart palpitations. He has also not experienced arrhythmias since November of 2019. The examiner concluded that Plaintiff had significant improvement and had no cardiac-related physical limitations.

Other evidence shows that, as of January 2020, Plaintiff had told his cardiology nurse practitioner, Rhonda Townsend, that he was doing well (Tr. 659). Plaintiff denied any chest pain, shortness of breath, dizziness, lightheadedness, or swelling. NP Townsend noted no signs of fluid overload and Plaintiff's ICD confirmed he had experienced no new cardiac events. NP Townsend referred Plaintiff to cardiac rehabilitation and told him to contact her with any concerns. He did not contact her. A remote check of Plaintiff's ICD in November 2020 recorded just two events of tachycardia (high heart rate). Tr. 631.

As the ALJ noted, the record was then silent until Plaintiff's March 2021 consultative examination. Tr. 22-24 (citing Exh. 6F). Plaintiff's cardiac condition had significantly improved by that time. Whereas Plaintiff's ejection fraction in November 2019 was just 35%, his ejection fraction in March 2021 was 60%. Tr. 22 (citing Exh. 1F at 1; Exh. 2F); Tr. 23 (citing Exh. 6F). In January 2020, Plaintiff's NYHA (New York Heart Association) classification was II, indicating "Slight limitation of physical activity. Comfortable at rest, but ordinary physical activity results in fatigue, palpitation, or dyspnea." Tr. 23 (citing Exh. 4F); Tr. 659. But by March 2021, Plaintiff's NYHA classification had improved to Class I, indicating "No physical activity limitations. No symptoms." Tr. 23 (citing Exh. 6F); Tr. 674. This was strong evidence that Plaintiff's cardiac symptoms had not persisted during his absence from treatment, and his cardiac condition had significantly improved.

Plaintiff told consultative examiner Chelsea McMillan, D.O., that he did not

5

experience chest pain, swelling, palpitations, cough, or shortness of breath. Tr. 670-81. He denied experiencing arrhythmias since his ICD placement in November 2019. Id. On physical examination, Plaintiff had a normal pulmonary examination, with normal breath sounds. Tr. 673. His heart rate was elevated, but he maintained normal rhythm with no murmurs, rubs, or gallops. *Id*. Plaintiff had no swelling and normal pulses. Tr. 674. He walked normally, with normal speed, sustainability, and stability. Tr. 675. Plaintiff maintained normal stamina, overall. Tr. 676. He had full strength in all muscle groups and full range of motion throughout his body. Tr. 677-80.

Dr. McMillan did not provide any opinions other than the following: (1) she answered "yes" to the question "Do you think this individual is able to stand/walk for at least 2 hrs in an 8-hr day?"; (2) she answered "yes" to the question "Do you think this individual could use the unoccupied upper extremity for lifting/carrying less than 10 pounds frequently or over 10 pounds occasionally?"; and (3) she rated Plaintiff's cardiac condition as NYHA Class I, indicating no physical limitations and no symptoms. Tr. 674-76.

Based upon Dr. McMillan's consultative examination and Plaintiff's treatment records, the state agency consulting physician on reconsideration, Joshua Eskonen, D.O., found in March 2021 that Plaintiff could perform a range of medium exertional work if also limited to (1) no more than frequently climbing ramps or stairs; (2) no more than occasionally climbing ladders, ropes, or scaffolds; and (3) no more than frequently balancing, stooping, kneeling, crouching, or crawling. Tr. 71-74.

The ALJ accepted all of the limitations Dr. Eskonen found, except the assessment that the claimant can frequently climb ramps or stairs. Tr. 21. Regarding the claimant's ability to climb, the ALJ found the claimant more limited by adding a more restrictive limitation of no more than

occasionally climbing ramps or stairs. Tr. 21, 24. The ALJ also added environmental limitations from working with unprotected heights or pulmonary irritants. Tr. 21. "When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019); *see also Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) ("There is no error when there is no doctor's opinion contained in the record that indicated greater limitations than those found by the ALJ."); *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) (finding it "illuminating and persuasive on its face" that no doctor found greater limitations than did the ALJ).

The ALJ noted that Plaintiff told Dr. McMillan he could lift 40 pounds. Tr. 22-23 (citing Exh. 6F). Plaintiff alleges that this was not his report, but rather that Dr. McMillan opined he could lift 40 pounds. The ALJ's interpretation appears reasonable and accurate, however. This note appears with the subjective "review of symptoms" and earlier in the report than the physical examination findings. Tr. 671-74. In her physical examination, Dr. McMillan found full strength and full range of motion throughout Plaintiff's body. *Id*. Dr. McMillan found no abnormalities on examination aside from an elevated heart rate. *Id*. However, Dr. McMillan found that Plaintiff had "no physical activity limitations," and "no symptoms" from his heart impairment. Tr. 674.

In light of Dr. McMillan's findings, there does not appear to be any basis on which Dr. McMillan would have limited Plaintiff to lifting 40 pounds. She did not identify any limitations in her bottom line "assessment and plan." Tr. 681. When asked whether Plaintiff could stand and walk for "at least" two hours in a workday, she indicated that he could. Tr. 676. And when asked whether he could carry 10 pounds with his "unoccupied upper extremity," she indicated that he could. *Id*. This question appears to relate to the questions on the previous page and is directed

toward individuals who require a cane or other assistive device to walk; hence the reference to an "unoccupied" arm. Tr. 675. But Dr. McMillan found that Plaintiff did not require an assistive device. *Id*. And for the questions specifically addressing people not requiring an assistive device, Dr. McMillan noted that Plaintiff had a fully normal gait with normal sustainability. *Id*. Read in context, Dr. McMillan assessed no limitations whatsoever, and any error in the ALJ's consideration of her report could only be harmless, at worst. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("But administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result."); *see also Henke v. Astrue*, 498 F. App'x 636, 641 (7th Cir. 2012) (finding that ALJ's failure to assign weight to opinion of state-agency medical consultant harmless error where report would not have aided claimant's case).

Plaintiff also argues that the ALJ disregarded his mild obstructive ventilatory defect. But the ALJ acknowledged and discussed this finding from December 2019. Tr. 23 (citing Exh. 2F). The ALJ also considered the later evidence, where Plaintiff explicitly denied experiencing any shortness of breath, fatigue, dizziness, cough, or chest pain. Tr. 23 (citing Exh. 6F). Plaintiff's own reports to Dr. McMillan in March 2021, after receiving no medical treatment since January 2020, were a sufficient basis for the ALJ to find that Plaintiff's mild lung condition did not necessitate a restriction from medium exertional work. *See* SSR 16-3p, 2017 WL 5180304, at *7 (Oct. 25 2017) ("Very often, the individual has provided . . . information [regarding his or her symptoms] to the medical source, and the information may be compared with the individual's other statements in the case record."). Dr. Eskonen reviewed the longitudinal treatment records as well as Dr. McMillan's report; it was reasonable for the ALJ to rely upon Dr. Eskonen's expert

8

opinion that Plaintiff could perform medium exertional work. The Seventh Circuit has held that reliance on state agency physicians is appropriate because "[t]he fact that these [reviewing] physicians reviewed the entire record strengthens the weight of their conclusions." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004). Clearly, the ALJ considered the record as a whole, but Plaintiff's evidence fell short of meeting his burden to prove that he was unable to perform medium work. *Karr*, 989 F.3d at 512-13 (sparse treatment records might amount to "failure of proof").

Additionally, substantial evidence supports the ALJ's determination that Plaintiff's impairments were not as limiting as he claimed. ALJ's findings regarding Plaintiff's subjective complaints are entitled to great deference. *See, e.g., Summers v. Colvin*, 864 F.3d 523, 528 (7th Cir. 2017) ("We give the ALJ's credibility finding 'special deference' and will overturn it only if it is 'patently wrong.'") (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)). Here, the ALJ considered Plaintiff's subjective complaints in light of the record, and where his subjective reports were inconsistent with and not supported by the record, the ALJ discounted them.

Because the ALJ's decision to not fully credit Plaintiff's allegations was not "patently wrong," there is no reversible error. *See Reed v. Colvin*, 656 F. App'x 781, 788 (7th Cir. 2016) ("The ALJ's credibility assessment thus is tied to evidence in the record and is not patently wrong, so we will not disturb that assessment.") (citations omitted).

Under SSR 16-3p, an ALJ will consider factors such as daily activities; the location, duration, frequency, and intensity of pain and other symptoms; factors that precipitate and aggravate the symptoms; medications; treatment; other measures to relieve pain or symptoms; any

9

other relevant factors. SSR 16-3p, 2017 WL 5180304 at *7-*8. However, the ALJ's consideration of these factors need not be explicit. *See Sawyer v. Colvin*, 512 F. App'x 603, 608 (7th Cir. 2013) ("[c]redibility assessments need not be explicit, or particularized to specific testimony.")*; see also Tilley v. Colvin*, No. 1:13-cv-1775, 2015 WL 926178, at *5 (S.D. Ind. Mar. 3, 2015) ("It is not necessary that the ALJ recite findings on every factor described in SSR 96–7p, or that he discuss every piece of evidence that might bear on credibility, or that he even specify exactly which of the claimant's statements were not credible."). As discussed below, the ALJ sufficiently considered Plaintiff's reports and demonstrated her reasoning in finding that those reports were not wholly reliable, based on multiple factors identified in SSR 16-3p.

In assessing these limitations, the ALJ credited Plaintiff's reports to some degree as the climbing and environmental limitations were greater than those assessed by any doctor. *See Burmester*, 920 F.3d at 510 ("This [RFC] finding was more limiting than that of any state agency doctor or psychologist, illustrating reasoned consideration given to the evidence [plaintiff] presented."). There is no error where, as here, "[i]t was because of and not in spite of [Plaintiff's] testimony that the ALJ limited [him] to a more restrictive residual functional capacity finding than any physician on the record." *Castile*, 617 F.3d at 929.

Contrary to Plaintiff's assertions, the ALJ did address relevant subjective symptom factors. The ALJ considered that Plaintiff was at work when his second cardiac event occurred. Tr. 22. But the ALJ also reasonably considered that after a long absence from treatment, Plaintiff told Dr. McMillan that he had not experienced any arrhythmias since that November 2019 event. Tr. 22-24. The ALJ also contrasted Plaintiff's subjective reports to the ALJ with Dr. McMillan's findings that Plaintiff's ejection fraction had significantly improved since 2019,

going from 35% to 60%. *Id*. Despite Plaintiff's occasional elevated heart rate, which the ALJ acknowledged (Tr. 23), Dr. McMillan upgraded Plaintiff's NYHA classification to Class I, indicating no physical limitations and no symptoms. Tr. 16, 23-24 (citing Exh. 6). The ALJ also contrasted Plaintiff's subjective reports to the ALJ with his reports to Dr. McMillan, noting that although Plaintiff testified he could lift no more than 20 pounds, he had told Dr. McMillan that he could lift 40 pounds. Tr. 23. Plaintiff's inconsistent statements were a reasonable basis for discounting his testimony. *See Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (where ALJ considered claimant's inconsistent statements in the record, holding that "ALJ properly took these inconsistencies into consideration when concluding that Summers's subjective complaints of disabling limitations were 'not entirely credible'"); *Hamilton v. Colvin*, 525 F. App'x 433, 437 (7th Cir. 2013).

The ALJ also considered that Plaintiff had not required any emergency care between January 2020 and March 2021, nor had he sought any low-cost options. Tr. 23. Plaintiff's reports to Dr. McMillan confirmed that since November 2019, his cardiac status had been uneventful. Tr. 22-24 (citing Exh. 6F). This supported the ALJ's conclusion that Plaintiff had not been significantly limited during his absence from treatment. *See* 20 C.F.R. § 404.1529(c)(3) (ALJ should consider course of treatment when assessing subjective symptoms); *see also* SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017) ("if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record"); *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (affirming adverse

11

credibility finding based on "relatively conservative" treatment consisting of "various pain medications, several injections, and one physical therapy session").

Plaintiff argues that the ALJ failed to address his stamina. But the ALJ did address Plaintiff's stamina. She noted that Dr. McMillan expressly found that Plaintiff had normal stamina. Tr. 23 (citing Exh. 6F); Tr. 676. The ALJ was not required to credit Plaintiff's testimony that he lacked stamina over Dr. McMillan's objective finding to the contrary, particularly in light of Plaintiff's reports to Dr. McMillan that he did not experience fatigue, shortness of breath, chest pain, or palpitations. Tr. 671, 676. Plaintiff mistakes the contradictory evidence on which the ALJ relied for an absence of objective evidence. But as shown here, the ALJ relied on Plaintiff's statements to Dr. McMillan directly contradicting his testimony, in addition to evidence showing no arrhythmias since November 2019. *Green v. Colvin*, 605 F. App'x 553, 558 (7th Cir. 2015) ("Although, to be credible, the severity of a claimant's symptoms need not be supported by objective medical evidence, here the ALJ disbelieved [Plaintiff] for reasons that go beyond the absence of objective evidence.").

Plaintiff also argues that the ALJ should have discussed his daily activities, but he fails to identify what evidence regarding his daily activities would have compelled a finding that he was unable to perform medium exertional work. *See Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (The Court "will reverse only if the record compels a contrary result." (internal quotation marks and citation omitted)). In his function report, Plaintiff stated that a typical day involved cooking complete meals, caring for his mother, shopping, and doing laundry. Tr. 243, 245. He had no problems with personal care. Tr. 244. He was able to garden. Tr. 245. He enjoyed fishing and bird watching regularly. Tr. 247. He denied any problems with squatting,

12

bending, standing, walking, or stair climbing. Tr. 248. His daily activities were not particularly telling, and the ALJ reasonably concluded that she was more persuaded by Plaintiff's reports to Dr. McMillan. *See Elder*, 529 F.3d at 414 (upholding the ALJ's subjective symptom assessment that was supported by a single valid reason); *Kittelson v. Astrue*, 362 F. App'x 553, 557 (7th Cir. 2010) (same).

Furthermore, Plaintiff's work history does not require remand. "An ALJ is not statutorily required to consider a claimant's work history." *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016). In addition, "work history is just one factor among many, and it is not dispositive." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). An "ALJ's silence [regarding the claimant's work history] is not enough to negate the substantial evidence supporting the adverse credibility finding." *Shumaker v. Colvin*, 632 F. App'x 861, 867 (7th Cir. 2015). Here, because other substantial evidence discussed by the ALJ supported her rejection of Plaintiff's subjective assertions, the ALJ's subjective symptom assessment was not patently wrong merely because the ALJ did not discuss Plaintiff's work history. *See Penrod v. Berryhill*, 900 F.3d 474, 478 (7th Cir. 2018) ("the ALJ did not commit reversible error by failing to explicitly discuss his work history when evaluating his credibility") (internal quotation marks and citation omitted). As the ALJ discounted Plaintiff's reports for valid reasons, based on the record, and did not ignore an entire line of evidence, Plaintiff has failed to show any error requiring remand. Accordingly, the decision will be affirmed.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the Commissioner is hereby AFFIRMED.

Entered: April 5, 2023.

<u>s/ William C. Lee</u>
William C. Lee, Judge
United States District Court